**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

JOHN MCGILL,                                        *

               Plaintiff,            *

                  v.                  *        Civil Action No. AW-03-2570

GIGANTEX TECHNOLOGIES, CO.,        *
LTD., *et al.*
               Defendants.          *
                        ***** 

<u>**MEMORANDUM OPINION**</u>

This action involves a suit brought by John McGill ("McGill" or "Plaintiff") against Gigantex Technologies Co., Ltd. ("Gigantex" or "Defendant") for the personal injuries McGill sustained as a result of a bicycle accident. Currently pending before the Court is Defendant's Renewed Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction [34] and Plaintiff's Motion to Transfer the Action to the United States District Court for the Northern District of Illinois. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will deny Defendant's Renewed Motion to Dismiss and grant Plaintiff's Motion to Transfer the Action to the Northern District of Illinois.

<u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

The following facts are taken in the light most favorable to the non-movant. McGill is an international environmental trade consultant and has competed as an elite amateur bicycle racer for the past eighteen years. In August 2000, McGill purchased a bicycle from Cooper Hsu of A2Z Design and Development, Inc. ("A2Z"), a Taiwanese company. McGill had the bicycle delivered to the Baltimore Washington Airport. McGill subsequently confirmed that Gigantex, a Taiwanese

company, manufactured the forks for this bicycle.

On September 9, 2001, McGill participated in the Brandywine Road Race in Wilmington, Delaware.  McGill competed in this race using the bicycle he purchased from A2Z in August 2000. While ascending a hill at approximately 20 miles per hour, the Gigantex-manufactured steerer tube on McGill's bicycle broke, causing him to crash headfirst into the pavement and sustain substantial injuries.

Gigantex is incorporated in Taiwan and has its principal place of business in Taiwan. Gigantex also manufactures more carbon crank arms than any other company in the world.  While Gigantex sells the majority of its products to Taiwanese trading companies and to European customers, it sells some of its products directly to the United States.  According to Gigantex, direct sales to United States customers have made up the following proportions of its gross sales: .3% of gross sales in 2000, .9% of gross sales in 2001, 3.4% of gross sales in 2002, and 3.5% of gross sales in 2003.  Gigantex has never had an office, property, employee or telephone listing in the United States.  Nor does Gigantex advertise or solicit business in the United States.

Since 2000, Gigantex has supplied carbon fiber seat posts and carbon fiber cranks to Sabin West ("West"), a resident of Illinois.  West sells these bicycle parts through an Internet site, CarbonLORD.  West has not incorporated CarbonLORD and does not file a separate tax return for CarbonLORD.  Although West maintains his own website, he makes most of his sales by auctioning the Gigantex parts on E-Bay, an Internet auction site.  West does not advertise the bicycle components as Gigantex products either on the CarbonLORD site or on E-Bay.[1]  Additionally, West

---

[1] Parties dispute the reason why West cannot identify the bicycle parts as Gigantex parts to his purchasers.  Plaintiff has intimated that Gigantex has instructed West not to reveal Gigantex as his supplier because Gigantex wants to obscure the extent of its sales in the United

removes all packaging and identifying information from the parts before his ships the items to his customers. The purchasers do not pay Gigantex or CarbonLORD, but pay West directly. Despite the fact that West does not retain shipping records for CarbonLORD, West believes that less than five percent of CarbonLORD's sales were made to customers outside of the United States and that forty percent of sales were made to customers in California. West also recalls selling Gigantex products to Maryland residents other than McGill. Through the CarbonLORD "business," West estimates that he sells between 50 and 100 Gigantex parts each year. West spends about two hours per week running the CarbonLORD "business," which entails checking email daily and going to the Post Office once or twice a month to ship orders.

When West began selling Gigantex seat posts and cranks through E-Bay, he purchased the parts over the Internet from Cyrille Dachudez ("Dachudez"). Eventually, Dachudez informed West that he would no longer sell cranks, but offered to forward an email to Steven Lee ("Lee") at Gigantex. This email stated that West had ordered parts from Dachudez, that West wanted to continue "doing business," and that Gigantex could contact West. Lee responded to this email, and, from that point, West bought seat posts and cranks from Gigantex directly.

West has not signed an agreement or contract with Gigantex. West only sells seat posts and cranks manufactured by Gigantex, but Gigantex is free to provide its products to other sellers in the same geographic area as West.

West buys carbon cranks from Gigantex at $135 per unit. Gigantex does not fix the price at which West may offer its products. While Gigantex has suggested that West sell the bicycle

---

States. Gigantex, on the other hand, avers that the company adopted this business practice because it may supply products to customers in the same geographic regions, and it does not want to compete against itself in the marketplace.

cranks at $175 each, West has sold the cranks from anywhere between $2 and $300.

West maintains an inventory of roughly 40 cranks and 10 seat posts for his business. When his inventory runs low, he places orders with Gigantex by email about twice a year of about 40 cranks and 10 seat posts. Gigantex provides email acknowledgment of these orders and delivers the products F.O.B.[2] Taiwan. West pays all import taxes and fees associated with shipping the products from Taiwan to Chicago. In the past, West has paid for these parts by cashier check or wire transfer from Bank One in Chicago.

Aside from placing these orders, West does not communicate with Gigantex on a regular basis. West, however, has requested information from Gigantex about "an occasional fit for a bottom racquet size." West also contacted Gigantex regarding a problem with a Gigantex crank that West sold to a CarbonLORD customer, and Gigantex provided West with a replacement. Other than these times, West has not consulted with Gigantex about his customers' orders. West does not disclose the identity or location of his customers to Gigantex.

On September 5, 2003, McGill filed this diversity suit in federal court against Gigantex, among others, asserting claims for negligence, strict liability, and breach of warranty. Gigantex initially moved to dismiss this action for lack of personal jurisdiction on May 24, 2004. This court denied the motion without prejudice to allow the parties to engage in additional discovery on the jurisdictional issue. After the completion of this discovery, Gigantex filed a renewed motion to dismiss on August 1, 2005. On the same date, Plaintiff filed a motion to transfer the action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1406 and

---

[2] F.O.B. means "free on board." Black's Law Dictionary defines F.O.B. as a term that denotes that "the seller must deliver the goods to the vessel named and has the risk of loss until the goods reach that location." Black's Law Dictionary 676 (7th ed. 1999).

1631.  Both Plaintiff's Motion to Transfer and Gigantex's Renewed Motion to Dismiss are pending and ripe for disposition.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  If the court does not conduct an evidentiary hearing, the plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge."  *Id.*; *Mun. Mortgage & Equity, L.L.C. v. Southfork Apartments Ltd. P'ship.*, 93 F. Supp. 2d 622, 626 (D. Md. 2000).  In making its determination, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

## DISCUSSION

A federal district court may only exercise jurisdiction over a non-resident defendant in the manner and extent authorized by state law in the forum state unless a federal statute establishes an alternative basis for exercising personal jurisdiction.  *See* Fed. R. Civ. P. 4(k); *ePlus Tech. v. Aboud*, 313 F.3d 166, 175 (4th Cir. 2002).  Thus, in a diversity case, a federal court only has personal jurisdiction over a party if a state court in the federal court's forum state would have personal jurisdiction. *Copiers Typewriters Calculators, Inc v. Toshiba*, 576 F. Supp. 312, 318 (D. Md. 1983). To evaluate whether personal jurisdiction exists in a diversity case, a federal court will engage in a two-part analysis.  First, the court will determine whether the long-arm statute authorizes the exercise of jurisdiction in the particular circumstances presented.  Second, if the court finds that the

long-arm statute permits the court to exercise jurisdiction, it must consider whether such an exercise of jurisdiction comports with the due process standards of the Fourteenth Amendment. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993) (citing *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990)).

I.   **Maryland Law on *In Personam* Jurisdiction**

Because Plaintiff filed this action in federal court in Maryland, this Court must first examine whether it may exercise personal jurisdiction over the Defendant under Maryland law. Maryland's long-arm statute provides, in pertinent part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State; ...
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State ...

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (2005). Courts have interpreted Maryland's long-arm statute as coterminous with the limits of the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry and the two inquiries become one." *Id.*

The exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause only where the defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial

6

justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations

omitted); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941-42 (4th Cir. 1994). As explained

in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), the jurisprudence of minimum

contacts developed to determine whether a defendant had a surrogate presence in the state. *Id.* at

623. Thus, a court must focus its inquiry on whether "a defendant's contacts with the forum state

are so substantial that they amount to a surrogate for presence and . . . render the exercise of

sovereignty just, notwithstanding the lack of physical presence in the state." *Id.* Where a defendant

purposefully availed himself of the privilege of conducting business in a particular forum, the

defendant has sought both the benefits and protections of that state's laws. *See Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 476 (1985). In such situations, "it is presumptively not unreasonable

to require him to submit to the burdens of litigation in that forum as well." *Id.*; *see also Foster v.*

*Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002).

In considering the question of personal jurisdiction, the Supreme Court has drawn a

distinction between "specific" and "general" jurisdiction. *See Helicopteros Nacionales de*

*Columbia v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction exists where a suit "arises out of"

a defendant's contacts with the forum state. *Id.* General jurisdiction, which permits a court to

subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with

the forum, exists only where a foreign defendant's in-state activities amount to "continuous and

systematic" contact with the state. *Id.* at 414-15. The level of contact required for the exercise of

general jurisdiction is significantly higher than that required for specific jurisdiction. *ESAB Group,*

*Inc.*, 126 F.3d at 628.

All parties acknowledge that Plaintiff's claims against Gigantex did not "arise out of"

Gigantex's activities within Maryland. Therefore, we must examine the general nature of Gigantex's contacts with Maryland and assess whether they constitute the type of "continuous and systematic" business contacts that would justify this Court exercising jurisdiction over this foreign corporation.

It is undisputed that Gigantex is a Taiwanese corporation, with its principal place of business in Taiwan and that the company does not and has never maintained an office in the United States. Gigantex manufactures products predominantly for sale through Taiwanese trading companies, and makes some direct sales to European customers. Gigantex makes a small number of direct sales to the United States' customers, but this Court can find no evidence that Gigantex has made any direct sales to any person or business located in Maryland.

Despite these facts, Plaintiff has argued[3] that Gigantex has contacts in Maryland under a "stream of commerce" theory. The Supreme Court has found that a forum state may assert jurisdiction over a non-resident defendant corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen, Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The Fourth Circuit, however, has clarified that a court may not exercise personal jurisdiction over a non-resident defendant under a "stream of commerce" theory unless the manufacturer also engages in some activity "purposefully" directed at the forum state. *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654,

---

[3] In Plaintiff's initial brief opposing Defendant's Motion to Dismiss, Plaintiff advanced the position that this Court has jurisdiction over Defendant. For all practical purposes, it appears that in Plaintiff's Motion to Transfer the instant action to the Northern District of Illinois, Plaintiff effectively abandoned the argument that personal jurisdiction and venue lies in Maryland. Nevertheless, this Court must address the question of whether the Court may exercise personal jurisdiction over Defendant in deciding Defendant's Renewed Motion to Dismiss.

658 (4th Cir. 1989).

Plaintiff has not adduced any additional information concerning Defendant's indirect sales to the State of Maryland that would support a finding of jurisdiction.  Gigantex concedes that it has made some direct sales to the United States and repeated sales to West.  Defendant also admits that it has made sales to customers in California, Florida, Washington, and Illinois, but no evidence suggests that Defendant's were aware of the final destination of these goods.  Plaintiff relies heavily on the testimony of West.  Yet, West testified that he does disclose the identity and location of his customers to Gigantex.  Moreover, West has admitted that he does not keep business records and that he cannot verify how many times he shipped his products to Maryland.  At best, Gigantex's contacts with Maryland appear sporadic.

That Plaintiff could ultimately obtain Gigantex components in Maryland does not show that Gigantex has significant contacts with Maryland.  *See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 214 (4th Cir. 2002) (holding that evidence that Russian company's products were shipped from Russia to the United States would not serve as a basis for exercising personal jurisdiction over the foreign company).  Nor do vague references to possible contacts with other customers across the United States suffice to demonstrate minimum contacts with the State of Maryland.  *Id.*  Because Gigantex lacks the minimum contacts required by the Due Process Clause, this Court finds that it cannot assert personal jurisdiction over Gigantex.

## II.   __Transfer Pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631__

If a court lacks personal jurisdiction over a defendant, it must determine whether it should transfer the case to another district in the United States pursuant to its 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631 authority.  Section 1406 provides: "The district court of a district in which is filed a

9

case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  The Fourth Circuit has interpreted this provision to authorize the transfer of a case to any district "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district."  *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988).

Section 1631 also allows a court to transfer an action if personal jurisdiction is lacking and states:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C.A. § 1631.

The decision to transfer falls within the discretion of the district court.  In determining whether to transfer a suit, courts must perform case-specific inquiry and analyze both the convenience and fairness of transferring the case.  *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).  Considering these factors, a court must remain mindful that Section 1406(a) reflects a policy favoring adjudications on the merits over dismissals.  *See Porter*, 840 F.2d at 257-58.

In this case, Plaintiff argues that a court in the Northern District of Illinois could exercise general jurisdiction over Defendant.  In support of this argument, Plaintiff has cited Defendant's

admissions that it has made several contracts with West, a resident of Illinois, and argues that these contracts as well as West and Gigantex's "close relationship" evidence the company's "continuous and systematic" contacts with Illinois.  Opposing Plaintiff's motion to transfer, Defendant has presented evidence that West and Gigantex did not have a "close relationship" and argues that personal jurisdiction does not exist in Illinois or anywhere in the United States.

This Court finds that the interests of justice require transferring the instant action.  Plaintiff has made a plausible argument that a court in Illinois may have jurisdiction over Defendant.  If the Court dismisses this case, however, Plaintiff cannot establish jurisdiction in Illinois because the Illinois two-year statute of limitations would bar Plaintiff from refiling the suit.  *See* 735 Ill. Comp. Stat. §§ 5/13-202;13-213(d).  As a general matter, transfer is warranted "when dismissal would terminate the action because the appropriate statute of limitations would have run in the alternative forum, barring the institution of a new action."  *See Johnson v. Helicopter & Airplane Servs. Corp.* 389 F. Supp. 509, 523 (D. Md. 1974).  To deny Plaintiff the opportunity to sue Gigantex in another jurisdiction, or possibly anywhere in the United States, would be grossly unfair.  *Cf. In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 735 (S.D.N.Y. 2003).  Normally, a court will not transfer cases to another district unless it can ascertain whether the other district has personal jurisdiction over the defendant.  Where, as here, a dismissal would almost certainly deprive Plaintiff of any legal recourse against this foreign corporation, this Court would rather transfer the action to the Northern District of Illinois, where a court in that forum can determine whether Illinois law permits it to exercise jurisdiction over Defendant, than dismiss this case outright.  As a result, this Court will deny Defendant's Renewed Motion to Dismiss and grant Plaintiff's Motion to Transfer the action to the Northern District of Illinois.

**<u>CONCLUSION</u>**

For all of the aforementioned reasons, the Court will DENY Defendant's Renewed Motion to Dismiss for Lack of Personal Jurisdiction [34] and GRANT Plaintiff's Motion to Transfer the action to the Northern District of Illinois.  An Order consistent with this Opinion will follow.

Date:  <u>September 30, 2005</u>                                 <u>                      /s/                      </u>
                                                                                  Alexander Williams, Jr.
                                                                                  United States District Court